United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VAN SLYKE, FRANKLIN CHAN, and THOMAS E. BROWNING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE BANK, CAPITAL ONE BANK, CAPITAL ONE FINANCIAL CORPORATION, and DOES 1–100, inclusive,<br><br>Defendants. | No. C 07-00671 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO TRANSFER** |

**INTRODUCTION**

In this putative class action challenging defendants' credit card practices, defendants move to dismiss three of plaintiffs' four claims under Rule 12(b)(6). Defendants also move to transfer this action to the Eastern District of Virginia. Defendants have shown that the California Consumer Legal Remedies Act does not cover the credit card transactions at issue, so that claim must be dismissed. However, plaintiffs' California claims for unfair competition and deceit are not "preempted" by Virginia law. Although this action could have been brought in the Eastern District of Virginia, defendants have failed to show that the convenience and public interest factors favor transfer. Accordingly, defendants' motion to dismiss for failure to state a claim is **GRANTED IN PART AND DENIED IN PART**. Their motion to transfer is **DENIED**.

**STATEMENT**

Plaintiffs David Van Slyke, Franklin Chan, and Thomas E. Browning were all offered and accepted credit cards from defendants (Compl. ¶ 9–11). They allege that they were charged unlawfully high and deceptive fees and were the victims of deceptive practices related to those credit card accounts (*ibid*.). Van Slyke is a resident of Ashtabula County, Ohio; Chan is a resident of San Francisco, California; and Browning is a resident of Salem, Arkansas (*ibid*.).

Defendant Capital One Bank is a Virginia-chartered bank with its principal place of business in McLean, Virginia (*id*. at ¶ 13).[1] Capital One Bank offers credit cards and financial products to consumers throughout the United States but the majority of its credit card business is conducted in or around Richmond, Virginia (Forestell Decl. ¶¶ 3–4). Defendant Capital One Financial Corporation is a financial holding company incorporated in Delaware (Compl.¶ 12). It allegedly has its principal place of business in McLean, Virginia (*ibid*.).

This action concerns defendants' subprime credit card business which it refers to as its Mainstreet line of credit cards (Forestell Decl. ¶ 6). When targeting the subprime credit card market, defendants allegedly do so with the expectation that card holders will default on at least one account allowing defendants to charge very high fees (Compl ¶ 18–22). Capital One Bank allegedly offers several credit cards with low credit limits, around $250 to $500, to its subprime customers, betting that they will exceed the limit on at least one card, allowing Capital One to charge fees on all card accounts (*ibid*.). Plaintiffs also allege that the credit agreements contain an unconscionable provision that requires disputes to be settled in arbitration with a waiver of class-action relief (*id*. at ¶¶ 55–57).[2]

---

[1] Plaintiffs' complaint alleges that Capital One Bank has its principal place of business in McLean, Virginia, while defendants point out that Capital One Bank's headquarters are actually in Richmond, Virginia (Forestell Decl. ¶ 4). Both are located in the Eastern District of Virginia.

[2] The relevant provision states (Doome Decl. Exh. A) (emphasis in original):
> You and we agree that either you or we may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.
> IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU OR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTION OR REPRESENTATIVE PROCEEDING.

Finally, plaintiffs allege that Capital One Bank's disclosures related to the cost of credit for its Mainstreet products are inadequate and deceptive (*id*. at ¶¶ 45–52). For example, credit card customers receive a monthly statement that shows a minimum payment that customers must pay. Many of Capital One's subprime customers are allegedly led to think they need only make the minimum payment to keep from defaulting on their account. Problems arise when Capital One has added late fees or over-the-limit fees to the account. With alleged deceptiveness, the minimum payment does *not* include those fees, so even though a customer pays the minimum payment, his or her account is still in default because of the additional fees, leading to a daisy chain of further penalties (*id*. at ¶¶ 17–21) .

At all times relevant to this action, the Mainstreet credit card business has been operated out of Goochland County, Virginia (Forestell Decl. ¶ 10). All policies related to those cards, including interest rates, late fees, conditions under which customers may obtain multiple cards, credit limits, default procedures, and disclosures regarding minimum payments were developed by employees working in or around Goochland County, Virginia (*id*. at ¶ 10). Capital One Bank maintains its electronic customer records largely in Virginia, and copies of solicitations used to market its credit cards are also stored there (*id*. at ¶ 9).

Defendants have identified a number of current and former Capital One Bank employees they believe may have information or be called as witnesses in this action. These include those responsible for designing solicitations, training customer service representatives to deal with customers, setting default rates and determining fee structures (*id*. at ¶ 11–21). The vast majority of these people reside in or around Goochland County Virginia (*ibid*.). No policies related to the cards were created in California.

Plaintiffs filed this action on February 1, 2007. The complaint alleges violations of the federal Truth-in-Lending Act, 15 U.S.C. 1601 *et seq*., the California Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq*., California Business and Professions Code §§ 17200 *et seq*., and a common-law claim for deceit or omission of material facts. Now, defendants move to dismiss the complaint and to transfer this action to the Eastern District of Virginia.

3

**ANALYSIS**

**1.    MOTION TO DISMISS.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (May 21, 2007). "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**A.    CLRA Claim.**

Defendants move to dismiss plaintiffs' first claim under the California Consumer Legal Remedies Act. Plaintiffs allege that defendants' practices in issuing credit cards and charging fees constituted unfair or deceptive practices. The CLRA prohibits a long list of "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

Defendants argue that this statute, by its own terms, does not apply to the extension of lines of credit. It only applies to the sale of "goods or services," and credit does not constitute the sale of goods or services. In support, defendants first cite to the statute's legislative history. The original draft of this statute expressly included individuals who obtained credit. Assemb. B. No. 292, 1970 Reg. Sess (Cal. Jan. 21, 1970) (Defs' Req. Jud. Not. Exh. A). Before the bill was passed, persons who obtained credit were removed from the statute's definition of "consumers" under the CLRA. Assemb. B. No. 292, 1970 Reg. Sess. (Cal. Jan 21, 1970) (as amended Aug. 7, 1970) (*id.* at Exh. B).

A recent California Court of Appeal decision relied on this legislative history in holding that the CLRA does not apply to the extension of lines of credit through credit cards, separate

4

1  and apart from the sale of goods or services. *Berry v. Amer. Exp. Publ'g., Inc.*, 147 Cal. App.
2  4th 224, 227 (Jan 31, 2007). In *Berry*, the plaintiff brought a putative class action alleging that
3  the defendants had been charging American Express cardholders, who paid annual fees for lines
4  of credit, for travel magazines they had never received. The plaintiff's only claim alleged that
5  the class action waiver in the credit agreement was unenforceable under the CLRA. The
6  decision held that issuing a line of credit, apart from providing any other good or service, was
7  not a transaction covered by the CLRA. In view of the relevant legislative history, this order
8  finds *Berry*'s logic persuasive. Additionally, a recent federal court decision also held that the
9  CLRA did not apply to credit cards. *Augustine v. FIA Card Servs., N.A.*, ___ F. Supp. 2d ____,
10 2007 WL 1176226, *2 (E.D. Cal. Apr. 20, 2007).

11       Plaintiffs cite several decisions in response, none of which is persuasive. *Klussmann v.*
12 *Cross Country Bank*, 134 Cal. App. 4th 1283 (2005), denied the defendant's motion to compel
13 arbitration. It did not address the question of whether the CLRA applies to mere extensions of
14 credit. Plaintiffs argue that CLRA claims were "litigated" against a bank issuing lines of credit
15 in *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005), but the decision merely
16 held that CLRA claims were not preempted by federal law. In *Badie v. Bank of America*, 67
17 Cal. App. 4th 779 (1998), a CLRA claim was "litigated," but the court never reached the issue
18 of whether the CLRA applies to the extension of credit. *Hitz v. First Interstate Bank*, 38 Cal.
19 App. 4th 274 (1995), dealt with a claim for liquidated damages, not a claim under the CLRA.
20 Finally, plaintiffs argue that in *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 n.2
21 (2005), the California Supreme Court noted that the plaintiffs could have brought a CLRA
22 claim based on extending a line of credit. Not so. *Discover Bank* merely stated that plaintiffs
23 had not tried to plead a CLRA claim (because they wanted to certify a nationwide class). None
24 of these decisions actually addressed whether a plaintiff could bring a CLRA claim based on the
25 extension of credit.

26       Finally, plaintiffs present a recent decision from my colleague Judge Thelton
27 Henderson, *Jefferson v. Chase Home Finance LLC*, 2007 WL 1302984 (N.D. Cal. May 3,
28 2007). Judge Henderson held that the CLRA did apply to financial services connected with

5

mortgages, specifically to a program under which debtors were able to prepay their mortgages without penalty. The claim under the CLRA was not directed to the extension of credit itself. It was directed at the defendant's prepaid mortgage practices, a financial service provided to debtors, so this decision is not on point.

More generally, plaintiffs seem to argue that their claim does not deal with the extension of credit and instead deals with a predatory scheme involving the extension of multiple lines of credit and high and deceptive fees charged thereon. It is difficult to see the distinction. Even if this alleged scheme does shock the conscience, plaintiffs still have not identified any good or service — the challenge is to the extension of credit. Of course, plaintiffs bought goods and services with their credit cards. But not from defendants. Plaintiffs do not allege that they were given or had purchased special rights or options under their agreement. They do not allege that defendants sold them any goods under the credit agreement (other than a plastic card evidencing a line of credit). And, they do not allege that defendants sold them any services. In short, this case deals only with the extension of credit, in however unseemly a manner, not with the sale or lease of goods or services.

Because this order has held that the CLRA does not cover credit card transactions (unless the seller of the goods or services happens to be the one extending credit), it need not address defendants' other arguments for dismissal of this claim. Accordingly, plaintiffs have not pleaded a claim under the CLRA, and defendants' motion to dismiss is **GRANTED** as to this claim, and it must be **DISMISSED**. Leave to amend would be futile.

### B. Unfair Competition and Deceit Claims.

Defendants argue that plaintiffs' California unfair competition claim and common-law claim of deceit fail because they are both preempted by Virginia law. California's unfair competition law prohibits the use of "any unlawful, unfair or fradulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. There is a choice-of-law provision in each of the credit agreements. The relevant provision states that "[t]his agreement is governed by Virginia law and federal law" (Doome Decl. Exhs. A–D). This order must now determine whether Virginia law governs the state law claims.

6

When a federal district court is sitting in a diversity action, it must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Manufacturing Co., Inc.*, 313 U.S. 487, 496 (1941). California courts apply a governmental interest approach. *ABF Capital Corp. v. Grove Properties*, 126 Cal. App. 4th 204, 215 (2005). When there is a valid, bargained-for choice-of-law provision in a contract, California courts apply the approach outlined in the Restatement Second of Conflict of Laws Section 187. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–65 (1992).

Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In short, a district court must first analyze whether the chosen state has a substantial relationship to the parties or their transaction. If the first prong is met, a court must then determine whether the chosen state's law is contrary to a fundamental policy of California. If so, then the court must weigh whether California has a materially greater interest than the chosen state in the determination of a particular issue. *Nedlloyd,* 3 Cal. 4th at 465–66.

**(1)** *Substantial Interest.*

For the first prong, defendants argue that Virginia, as the state chosen by the parties, bears a substantial relationship to the transaction. There is a substantial relationship if one of the parties is domiciled in the chosen state. *Nedlloyd*, 3 Cal. 4th at 467. Capital One Bank is chartered in Virginia and runs all of its credit card operations there. Thus there is a substantial relationship between the state of Virginia and the transaction.

### **(2)** *Fundamental Policy.*

Plaintiffs argue that enforcing the choice-of-law provision would be contrary to a fundamental policy of the state of California. Specifically, if Virginia law were applied to this action, it would effectively waive plaintiffs' ability to bring or participate in a class action. They cite *America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 16 (Ct. App. 2001), for the proposition that Virginia choice-of-law provisions are *never* enforceable in the class-action context because doing so would contravene California's public policy. This characterization of the *AOL* is overly broad. First, the decision actually determined that applying Virginia law would function as a contractual waiver of consumer protections under the CLRA. The CLRA does contain an anti-waiver provision that states that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." Cal. Civ. Code § 1751. No such express provision exists in California's unfair competition law or in deceit claims. *See* Cal. Bus. & Prof. Code §§ 17200 *et seq*. Second, enforcing the Virginia choice-of-law provision contravened a California public policy because it would have effectively eliminated the plaintiffs' ability to pursue a class action. The plaintiffs would have had to individually litigate claims for small amounts of money in a distant forum, the effective death knell for any consumer claim. *AOL*, 90 Cal. App. 4th at 15–16.

Here, plaintiffs argue that if Virginia law applies, then the class-action waiver in the credit card agreement will be enforceable. Plaintiffs will be subject to individual arbitration without the benefit of class procedures which would contravene a fundamental California public policy. California courts have found class-action waivers in adhesion contracts with credit card companies unconscionable. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160–61 (2005). In *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003), where plaintiffs had brought claims under the CLRA, the Ninth Circuit held that an arbitration provision in a long-distance service contract was unconscionable because it would effectively foreclose plaintiffs from vindicating their rights under California law. Similarly, in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285–87 (9th Cir. 2006), an arbitration clause in a franchise agreement was held unconscionable under California contract law. This decision did not involve a class-action

8

1 waiver, however, it does show California's strong public policy against enforcing choice-of-law
2 provisions that would abrogate the plaintiffs' rights to pursue remedies.

3 Virginia consumer protection laws generally do not allow for class actions. *AOL*, 90
4 Cal. App. 4th at 17; *See* Va. Code § 59.1-205. Defendants argue that this is not a concern
5 because some class actions have been certified under Virginia consumer law. In *Chisolm v.
6 TransSouth Fin. Corp.*, 194 F.R.D. 538, 546 (E.D. Va. 2000), a Virginia federal court certified a
7 consumer class action. This decision, however, did not involve a class-action waiver or the
8 enforceability of an arbitration clause. Class-action remedies, however, are readily available
9 under California's unfair competition law. *Corbett v. Superior Court*, 101 Cal. App. 4th 649,
10 670–72 (2002); *see also Huntington Mem'l Hosp. v. Superior Court*, 131 Cal App. 4th 893
11 (2005). Thus, there is a substantial risk that a California fundamental public policy in favor of
12 class actions would be harmed by applying Virginia law.

13 Defendants argue that plaintiffs have not identified a fundamental public policy that
14 would be harmed by the application of Virginia Code § 6.1-330.79. That section forbids any
15 claim that seeking to regulate conduct within the scope of the federal Truth-in-Lending Act.
16 Defendants miss the point of plaintiffs' argument; the fundamental public policy they have
17 identified here is California's interest in affording its citizens effective consumer class-action
18 remedies.

19 **(3)** *Materially Greater Interest.*

20 Turning to which state has a materially greater interest in applying its law, defendants
21 argue that Virginia has a strong interest in regulating its own banks. But we are not dealing
22 with a local neighborhood lender operating only in Virginia. We are dealing with a Virginia
23 bank operating in California and nationwide, having reached far into commerce beyond its state
24 lines. If Virginia is "regulating" its banks so as to perpetrate scams on California consumers, as

9

1 alleged, then California's own anti-deception statutes take priority, at least in a California
2 forum.[3]

3 In their motion to dismiss, defendants only argue that plaintiffs' unfair competition and
4 deceit claims are "preempted" by Virginia law. Because this order has held that California law,
5 and not Virginia law applies, defendants' motion to dismiss is **DENIED.** Defendants' further
6 arguments that the remaining claims should be narrowed because two of the named plaintiffs
7 are not California residents should be addressed at the class certification stage. Defendants
8 have also failed to show that plaintiffs cannot plead claims against Capital One Financial.

### 2. MOTION TO TRANSFER.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The purpose is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted). A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The district court must consider both public factors which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Ibid.*

All agree that this action could have been brought in the United States District Court for the Eastern District of Virginia. Defendants are chartered there, have their headquarters there, and conduct most of their business there.

---

[3] This order explicitly does not address the merits of plaintiffs' Section 17200 claim. That issue was not briefed in defendants' motion to dismiss. They only argued the claim cannot be brought under Virginia law.

10

### A.     **Convenience and Fairness Factors**.

The district court must consider private convenience and fairness factors, including ease of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and relative convenience to witnesses. *Decker Coal*, 805 F.2d at 843.

The first factor concerns the location of sources of proof. With technological advances in document storage and retrieval, transporting documents does not generally create a burden. *Vitria Tech. Inc. v. Cincinnati Ins. Co.*, 2005 WL 2431192, *3 (N.D. Cal. 2005). Defendants contend that all of the hard copies of records related to its credit card services are located in the Eastern District of Virginia. It appears, however, that defendants have a substantial amount of electronic records stored on servers located both in the Eastern District of Virginia and elsewhere. None of its documents are located in our district. Other than describing where their records are located, defendants do not contend that transporting records, or reducing them to electronic form, would cause them significant hardship. It may reduce discovery costs somewhat, at least for defendants. This factor, however, is of diminished importance and is neutral toward transfer.

As to the second factor, plaintiffs have chosen the Northern District of California as their forum. "Although great weight is generally accorded to a plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (internal citations omitted). Plaintiffs purport to represent a nationwide class of Capital One cardholders. Defendants argue that because of this, their choice of forum should be accorded little deference. No class has yet been certified, so these are currently the only plaintiffs. Indeed, even if a nationwide class were certified the named plaintiffs would still bear a fiduciary responsibility to lead the class. The other class members would never need to appear in this action unless they wished to intervene. They may wish to do so at some point, but this such possibility is premature now. Accordingly, plaintiffs' choice of forum is still entitled to some deference, even though diminished. This factor cuts *against* transferring this action.

1  Turning to the third factor, the convenience of parties, we must keep in mind the
2  distinction between parties versus witnesses, which can overlap. Witness convenience will be
3  considered below. Party convenience refers to the named parties. A corporation is a legal
4  fiction and does not travel, but its corporate officer responsible for managing the litigation
5  counts for this purpose. The motion does not tell us who is the corporate officer responsible for
6  managing the litigation for Capital One. This order presumes, however, that Capital One has a
7  general counsel in Virginia. That individual would find it more convenient to attend hearings,
8  trial, and settlement conferences in Virginia. His or her airfare and travel expenses would be
9  reduced if they case were sent to Virginia. Again, this is a presumption since this point was not
10 developed in the submission.

11  On the other hand, the California plaintiff is located in San Francisco within sight of our
12 courthouse. A lead plaintiff has important responsibilities in managing class actions. To send
13 this case to Virginia would be a financial hardship on the California plaintiff and would
14 compromise lead plaintiffs' ability to attend hearings. (The Court notes, however, that no
15 plaintiff attended the hearing on the instant matter.) Counsel states that she may join yet more
16 California plaintiffs. That has not happened yet and will not be taken into account. On the
17 plaintiffs' side, what is of most weight is the existing San Francisco lead plaintiff and the
18 prospect of a state-wide California class of consumers. To that end, a California forum is far
19 more convenient.

20  The two other extant plaintiffs reside in Arkansas and Ohio. For them, Virginia is
21 closer. But attendance in court at either end of the country will require air travel. Overall,
22 Virginia is somewhat favored in evaluating the convenience to the parties.

23  Now we turn to convenience to potential witnesses. Depositions are not a factor since
24 they usually occur where witnesses reside anyway. *Trial* convenience is what matters. This
25 breaks down into convenience of locations for all witnesses and, a separate but related concern,
26 the availability of compulsory process to bring unwilling witnesses live before the jury (rather
27 than to appear by deposition). Given the early stage of this action, witness lists are far from
28 definite at this time. Defendants, however, have identified 24 current and former employees

12

who would be likely to have information related to this action or be called as witnesses at trial. Nearly all of them live and work in the Eastern District of Virginia (Forestell Decl. ¶¶ 11–21). "Having information related to this action" cuts only a small figure, however, for that information can be collected in a deposition or by interrogatory. "Likely to be called as a witness at trial" is the main focus. The defense list does not tell us which is which.

As to third-party witnesses, defendants identify three former employees, all of whom reside in the Eastern District of Virginia (*id.* at ¶¶ 15, 20, 21). One of them was responsible for policies for offering additional card accounts to customers, one was responsible for account disclosures online, and one was responsible for training customer service representatives. Jack Forestell, a Capital One Bank employee responsible for the relevant credit card lines, did not identify the precise titles of any of the 24 potential witnesses and declares that the current list may not be exhaustive. This makes it more difficult to evaluate the importance of any one of these witnesses, but this order accepts that at least several of the 24 current and former employees will testify at trial. These witnesses would find Virginia a more convenient forum than California.

On the other hand, the trial of the Section 17200 claim would likely involve a state-wide class of California residents. To illustrate the "unfair" impact of the challenged practices, California consumers would likely be called to tell their stories. This would be in addition to the California named plaintiff. For these witnesses, California would be a more convenient forum. There is no clear-cut balance on this factor.

As stated, a related but different factor is the ability to present trial witnesses live rather than by deposition. This factor focuses more on the efficacy of the fact-finding process, not on witness convenience. We want our fact finders to have the benefit of live testimony over deposition testimony. Live testimony is easier to follow. Live testimony can respond to all issues in play at the trial whereas depositions are necessarily limited to subjects raised at the deposition, which can occur so far in advance of trial that the full story does not come out.

Both sides can be expected to prevail upon their partisan witnesses to appear at trial if their testimony will be favorable. If it is unfavorable, then the only avenue for live trial

13

testimony is the subpoena. If this case remains here, for example, then plaintiffs' counsel may regret that some key adverse witness will be beyond the subpoena power of the Court and counsel will be unable to be pummel them before the jury. The same, however, would be true in reverse.

Most cases have some third-party non-partisan witnesses who will refuse to voluntarily appear at trial and can be made to do so only through a subpoena. Sometimes these witnesses are critical precisely because they are non-partisans. All other things being equal, the overall quality of the trial is better in the venue where more unaffiliated witnesses can be compelled to testify.

With respect to our immediate record, defendants' proffer has already been described. Obviously, the Virginia witnesses would only be subject to trial subpoena in Virginia. On the other hand, plaintiffs have filed the declaration of a third-party witness in Costa Mesa, California. She is Amelia Lazzara, a credit consultant. She is very familiar with Capital One's alleged practices at issue in this action and has negotiated with Capital One on behalf of a number of her clients to improve their debt situations (*id*. at ¶ 7). Ms. Lazzara is likely to be an important witness for plaintiffs, and since she resides in California, she is within this Court's subpoena power. She could not be compelled to testify in the Eastern District of Virginia, but could be compelled here. There is no decisive imbalance in weighing this factor.

To summarize, plaintiffs' choice of forum favors California. The other convenience factors favor Virginia, but only modestly.

### B. Interests of Justice.

A district court hearing a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. *Decker Coal*, 805 F.2d at 843.

Defendants point out that dockets are more congested in the Northern District of California than in the Eastern District of Virginia. On average, judges in the Northern District of California have 583 cases pending, while judges in the Eastern District of Virginia have only

14

1 278 cases pending (Defs' Req. Jud. Not. ¶¶ 4–5). Median time from filing a complaint to trial
2 in the Northern District of California was 25 months in 2006, while in the Eastern District of
3 Virginia, it was only 9.3 months (*ibid.*). Trial in this case, however, has already been set for
4 May 19, 2008, less than a year away. Dockets likely are less congested in the Eastern District
5 of Virginia, however, it seems clear that this case will be resolved sooner if it stays here, taking
6 into account the delay in effecting a transfer and restarting the case in a new forum. The goal of
7 Rule 1 to achieve just, speedy and inexpensive determination of every action will be best served
8 by keeping the case here.[4]

9 Plaintiffs argue that local interests favor keeping this action in the Northern District of
10 California. Specifically, they argue that keeping this action in California serves the state's
11 interest in "preventing fraudulent practices which may have an effect both in California and
12 throughout the country." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036,
13 1063–64 (1999). In this action, plaintiffs do allege some California claims, some of which
14 could potentially be certified as a nationwide class. As described above, California law governs
15 plaintiffs' claims. It is estimated that 20% of the putative class resides in California and
16 certainly 100% of a state-wide class for a Section 17200 claim would reside in California.
17 Here, there is a local interest in keeping this action in California. This factor favors keeping
18 this action in this district.

19 To repeat, defendants argue that this action concerns the policies and practices of a
20 Virginia bank, thus the state of Virginia has a significant interest in regulating its banks.
21 Defendants' credit card agreements have a Virginia choice-of-law provision, however, as shown
22 above, that provision is not enforceable here. The state of Virginia does have an interest in
23 regulating its banks, but that interest conflicts with California's interest in ensuring efficacious
24 remedies, such as class actions, for its citizens, as stated. California has a greater interest in
25 adjudicating this action, so this factor disfavors transfer.

---

[4] The undersigned almost always brings civil cases to trial within ten to fourteen months from the date of the case management conference (unless the case resolves before trial). This case is set for trial on May 19, 2008. In eight years of service, over 90% of his civil trials have commenced on the very day set in the case management order, continuances rarely being granted.

15

1    Concurrent with the local-interest factor is the issue of burdening citizens of an
2 unrelated forum with jury duty. Here, California has a greater interest in adjudicating this
3 dispute, and as three of the claims arise under California law, this forum is related to the action.
4 This factor disfavors transfer.

5    Defendants urge that a Virginia federal judge and a California federal judge will each
6 have to apply the same California's choice-of-law rule. This argument is made by way of
7 explaining that no harm on the issue of law will come to plaintiffs by way of a transfer. By the
8 same token, there is no point in postponing resolution of the conflict issue since it should come
9 out the same way whether decided here or there, especially since defendants themselves have
10 moved to dismiss the state law claims and thus teed up the conflict issue for resolution. Since
11 this order has determined that California law should govern, at least as to the California claims,
12 it would be better to have a judge familiar with California law to preside over this case.

13    On balance, the interests-of-justice factor disfavors transferring this action. In sum,
14 while certain factors favor transfer, others do not. Defendants have not carried their burden to
15 justify a transfer. The motion is **DENIED**.

### CONCLUSION

17    For all of the above-stated reasons, defendants' motion to dismiss is **GRANTED IN PART**
18 **AND DENIED IN PART**. Defendants' motion to transfer this action to the Eastern District of
19 Virginia is **DENIED**. Defendants must file an answer within **TWENTY DAYS** of the date of this
20 order.

22    **IT IS SO ORDERED.**

24 Dated: June 7, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE