IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VAN SLYKE, FRANKLIN CHAN, and THOMAS E. BROWNING, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL ONE BANK, CAPITAL ONE FINANCIAL CORPORATION, and DOES 1–10, inclusive,<br><br>Defendants. | No. C 07-00671 WHA<br><br>**ORDER (1) GRANTING MOTION TO DISMISS; (2) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS ASSERTED BY PLAINTIFF BROWNING** |

**INTRODUCTION**

In this putative class action regarding defendants' credit card practices, defendants have filed three motions. First, they move to dismiss plaintiffs' Truth In Lending Act claim under Rule 12(b)(6). Second, they move for summary judgment as to all claims asserted against defendant Capital One Financial Corporation on the grounds that it does not issue credit cards. Finally, they move for summary judgment as to all claims asserted by plaintiff Thomas E. Browning. Defendants assert that Browning was bound by a prior class-action settlement in Arkansas state court which bars him from asserting claims in this action against defendants. Defendants have shown that plaintiffs have failed to state a claim for a violation of the Truth in Lending Act. Plaintiffs have shown that there remain triable issues of fact as to whether Capital One Financial can be held directly liable for deceit and violations of California's unfair

competition law. Defendants have eliminated all triable issues of fact as to whether plaintiff Browning's claims are barred by a prior class settlement. Accordingly, defendants' motion to dismiss is **GRANTED**. Plaintiffs will be allowed to file a proposed amended pleading and a motion for leave to file an amended complaint. Defendants' motion for summary judgment on claims against Capital One Financial is **GRANTED IN PART AND DENIED IN PART**. Defendants motion for summary judgment on claims asserted by plaintiff Browning is **GRANTED**.

## STATEMENT

Plaintiffs David Van Slyke, Franklin Chan, Myrna Bragado, Robert Hart, Susan L. Garcia, and Thomas E. Browning were all offered and accepted credit cards, allegedly from defendants Capital One Bank and Capital One Financial Corporation (Second Amended Compl. ¶¶ 8–13).

This action largely concerns defendants' sub-prime credit card business, which it refers to as its Mainstreet line of credit cards. When targeting the subprime credit card market, defendants allegedly do so with the expectation that card holders will default on at least one account allowing defendants to charge very high fees (*id*. at ¶ 18–22). Capital One Bank allegedly offers several credit cards with low credit limits, around $250 to $500, to its subprime customers, betting that they will exceed the limit on at least one card, allowing Capital One to charge fees on *all* card accounts (*ibid*.).

Plaintiffs also allege that Capital One Bank's disclosures related to the cost of credit for its Mainstreet products are inadequate and deceptive (*id*. at ¶¶ 62–65). For example, credit card customers receive a monthly statement that shows a minimum payment that customers must pay. Many of Capital One's subprime customers are allegedly led to think they need only make the minimum payment to keep from defaulting on their account. Problems arise when Capital One has added late fees or overlimit fees to the account. With alleged deceptiveness, the minimum payment does *not* include those fees, so even though a customer pays the minimum payment, his or her account is still in default because of the additional fees, leading to a daisy chain of further penalties (*ibid*.). New to the second amended complaint is plaintiffs' allegation that Capital One has a practice of refusing to issue billing statements on accounts that it has

2

1  "charged off" for a loss for tax purposes, even though interest rates and fees are still accruing on those accounts' outstanding balance (*id*. at ¶ 26).

As to the relationship between defendants Capital One Bank and Capital One Financial Corporation, plaintiffs allege that defendants acted as one another's agents with respect to the actions at issue (*id*. at ¶ 17). It also alleges that Capital One Bank is a wholly-owned subsidiary of Capital One Financial ("COF") (*id*. at ¶ 1).

Defendants contend that Capital One Financial does not issue credit cards or collect fees on credit card accounts. Amy Cook, senior director and associate general counsel, declares that Capital One Financial does no business other than owning subsidiaries (Cook Decl. ¶ 3). Capital One Bank is a subsidiary of Capital One Financial Corporation and maintains separate boards of directors, books and accounts (*id*. at ¶ 4). Furthermore, Cook declares that Capital One Financial does not market, solicit, or issue credit cards (*id*. at ¶ 5).

In one of their motions for summary judgment, defendants argue that plaintiff Browning's claims are barred because he was bound by a prior settlement. Defendants' senior complaint associate declares that the only Capital One account Browning ever held was a "Easy D" or "EZD virtual deposit card" (Doome Decl. ¶¶ 3–4, Exh. A). A report generated from defendants' databases using plaintiff Browning's name indicates his account type as "EZD" (Doome Reply Decl. Exh. A) Defendants also present statements from Browning's account which show payment of and credits against a security deposit of the kind used in virtual deposit cards (McGuire Decl. Exhs. A, B).

In April 2002, a class action complaint was filed in the circuit court of Pulaski County, Arkansas that challenged Capital One Bank's marketing and administration practices related to their EZD virtual deposit cards. That action was captioned *Foster v. Capital One Bank, Inc., and Capital One Services, Inc*., Case. No. Civ. 02-3775 (Def's Req. Jud. Not. Exh. A).

By an order dated October 26, 2005, the *Foster* court certified a class consisting of (*id*. at Exh. C, ¶ 3):

> All residents of the State of Arkansas who [sic] (1) who were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for a Capital One "secured" credit card; (3) who received a "secured" credit card; (4) whose "security

3

> deposit" was charged to the credit card. The class definition expressly excludes damages for any charges by Defendants which could reasonably be construed as being related to interest charges.

The court issued a preliminary order approving parties' proposed settlement on March 24, 2006 (*ibid.*). The scope of the claims released was defined by the settlement agreement as (*id.* at Exh. E, at 8) (emphasis added):

> [A]ll claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, *as asserted or that might have been asserted* in the Litigation against the Released Persons for the period commencing April 4, 1997 through and including the Effective Date, *pertaining in any way to the EZD virtual deposit credit card issued by Capital One Bank*, including the advertising connected with the credit card, the handling of the security deposit changed to the card, *the assessment of fees and finance charges*, and the application of payments to account balances, based upon contract or tort (including, without limitation, breach of contract, negligence, recklessness, misrepresentation, fraud, suppression), contribution, indemnification, or violations of any federal, state, local, statutory or common law or any other law, rule, or regulation, including both known and unknown claims, that have been or could have been asserted in any forum by Plaintiff or any Member of the Settlement Class, or any of them, or the successors and assigns of any of them, including but not limited to all claims, rights or causes of action which have been or could have been asserted in the Litigation for the Settlement Class Period and/or the acts, omissions or failures to act which were or could have been alleged in the Litigation for the Settlement Class Period.

Pursuant to the settlement agreement, defendants were directed to send notice of the settlement to class members by United States mail and to publish a notice of settlement in a local newspaper (*id.* at ¶ 6). The claims administrator generated a list of absent class members, including Browning, updated the list using the National Change of Address Database, and sent out notices to the class members (Tilghman Decl. ¶¶ 4–6). No claim form was received from Browning, he did not file an opt-out notice, and his notice and claim form was not returned undeliverable to the administrator (*id.* at ¶ 7). The settlement was finally approved on June 5, 2006, with the Court holding that notice was given to absent class members in the best practicable method under the circumstances.

This action was filed on February 1, 2007. Defendants filed a first motion to dismiss and a motion to transfer to the Eastern District of Virginia on April 12, 2007. By an order dated

4

June 7, 2007, the motion to transfer was denied and the motion to dismiss was granted in part and denied in part. Plaintiffs' California Consumer Legal Remedies Act claim was dismissed, and plaintiffs were granted leave to amend. The remainder of defendants' motion to dismiss, including their motion to dismiss all claims against Capital One Financial, was denied.

Defendants filed a motion for leave to file a motion for reconsideration on June 18, 2007. On June 26, 2007, plaintiffs filed a first amended complaint that deleted the Consumer Legal Remedies Act claim and added three California plaintiffs. Defendants' motion for leave to file a motion for reconsideration was denied in part and granted in part by an order dated July 3, 2007. Defendants' motion to strike a portion of plaintiffs' deceit claim was granted. All other portions of the motion, including defendants' motion to dismiss all claims against Capital One Financial, were denied. Also, on July 3, 2007, plaintiffs filed a second amended complaint to conform to the order on defendants' motion to strike and added a handful of other allegations. Defendants filed the three extant motions — a motion to dismiss the Truth in Lending Act claim, a motion for summary judgment as to Capital One Financial and a motion for summary judgment on plaintiff Browning's claims — on July 12, 2007. In addition to the large number of motions filed in this action, parties have vexatiously fought over discovery.

**ANALYSIS**

Plaintiffs first argue that all three of defendants' motions are procedurally improper. Specifically, they contend that the motion to dismiss is barred by Rule 12(g) because defendants have advanced theories in a subsequent motion to dismiss that could have been advanced in an earlier motion to dismiss, without a change in pleaded facts or underlying law. Defendants point out that plaintiffs made substantive changes to their complaint by adding the allegation that defendants stop issuing account statements under certain circumstances. Defendants also contend that there were legitimate strategic reasons for dividing their motions to dismiss. They first moved to dismiss the California claims in order to be able to enforce the arbitration clause. The first motion was unsuccessful, so they brought the second motion. The Court will hear this motion, however, subsequent motions to dismiss will not be viewed favorably.

As to the motions for summary judgment, there is nothing per se wrong with early motions for summary judgment. Indeed, they can promote efficiency by narrowing issues in advance of trial. These motions, however, were filed on the day that defendants first turned over some documents to plaintiffs. Still, plaintiffs' assertion that they are "entitled" to discovery before a motion for summary judgment is filed under Rule 56(f) overstates their position. They may request further discovery, but nothing in the rules forbids early summary judgment motions. Nonetheless, this order must note that defendants are presenting the issue of Capital One Financial's liability for the third time and further motion practice will not be encouraged.

### 1. MOTION TO DISMISS TRUTH IN LENDING ACT CLAIM.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S.Ct. 1955, 1964–65 (May 21, 2007). "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

#### A. Unsolicited, Preapproved Credit Card Offers.

Plaintiffs' TILA claim first alleges that "the unsolicited submission of 'pre-approved' credit card offers violates the TILA and Regulation Z" (Sec. Amd. Compl. ¶ 61). The relevant section of TILA provides that "No credit card shall be issued except in response to a request or an application therefor." 15 U.S.C. 1642. Similarly, Regulation Z provides that no credit card can be issued except in response to an application or request for a card. 12 C.F.R. 226.12(a). The mere sending of a pre-approved credit card *application* is not prohibited because no credit card issues except on the recipient's request. Indeed, plaintiffs do not oppose this part of the

6

motion to dismiss. Accordingly, this allegation cannot form the basis of plaintiffs' TILA claim.

### B. Disclosure of Minimum Payments.

Plaintiffs next allege that defendants failed to disclose that the minimum payment listed on monthly statements does not include all of the fees charged so that cardholders are continually in default on their accounts. According to plaintiffs, this practice violates 15 U.S.C. 1637(b)(9), which requires disclosure of "the date by which or the period (if any) within which, payment must be made to avoid additional finance charges, except that the creditor may, at his election and without disclosure, impose no such additional finance charge if payment is received after such date or the termination of such period." The fees are a finance charge, so the argument goes, because defendants anticipate that cardholders will exceed the limits and make late payments.

Overlimit fees and late fees are not finance charges. They are explicitly excluded from TILA's definition of finance charges. According to 12 C.F.R. 226.4(c), "charges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence" are not finance charges. Although they never make it clear, plaintiffs may be arguing that since defendants are betting that their subprime customers will make late payments, late fees are not "unanticipated" under the regulation. This argument is tenuous at best given that the chances of any particular cardholder making a late payment or exceeding their limit at any time are unknown. Even if all of plaintiffs' allegations are true, defendants are still only playing percentages. Under Regulation Z, late fees and overlimit fees need not be disclosed as finance charges. Indeed, they are governed by different parts of TILA and Regulation Z and must be itemized on the statement. *See* 12 C.F.R. 226.7(f).

Additionally, defendants are correct that TILA and Regulation Z promulgated thereunder do not require card issuers to disclose a minimum payment. *See* 12 C.F.R. 226.5, 226.6, 226.7. Regulation Z requires disclosure of many items of information regarding a credit card agreement but not a minimum payment or how any minimum payment is calculated. The statute and regulations cited in the complaint govern due dates and the disclosure of new

7

balances, not the minimum payments. The regulations require the disclosure of the "free-ride period" or the *date* by which cardholders must pay to avoid finance charges.

In their opposition, plaintiffs protest that such mechanistic discussion "misses the point" of their claim (Opp. at 7). Plaintiffs contend that they have alleged that defendants deceived them into thinking that paying the minimum payment would keep their account out of default. Defendants did not include overlimit and late fees in calculating the minimum payment. If a cardholder only pays the minimum payment, the other fees still keep accruing on the account. Plaintiffs' argument simply ignores that 15 U.S.C. 1637(b)(9) does not address minimum payments; it requires that the creditor disclose the new balance and the time by which it must be paid off to avoid finance charges. The argument that defendants are trapping their cardholders into paying higher fees by not including fees in the minimum payment fits much better into plaintiffs' claims for deceit and unfair business practices. Taking plaintiffs allegations as true, defendants are hiding the ball on fees and the amount of payment required to keep from incurring more fees, but plaintiff simply cannot shoehorn this claim into TILA.

### C. True Cost of Credit.

Plaintiffs allege that defendants violate TILA because Capital One's customer agreement required that cardholders and applicants write a letter to determine the true cost of credit (Sec. Amd. Compl. ¶ 64). Defendants' website allegedly stated "The information about the costs of the cards described is accurate as of 01/01/07. This information may have changed after that date" (*id*. at ¶ 29). Cardholders allegedly would have to write to defendants to obtain the most recent terms that governed their credit agreements.

Under 15 U.S.C. 1637(b)(4), creditors are required to disclose on monthly statements "the amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge." Here, plaintiffs did not allege that information was missing from monthly statements, they instead pleaded that cardholders and applicants must write a letter to defendants to obtain the most up-to-date terms for credit (Sec. Amd. Compl. ¶ 64). In their opposition, plaintiffs abandon that allegation and instead argue that defendants did not disclose

8

the cost of credit because they failed to disclose finance charges. Whether they mean the finance charges in the statements or in the customer agreement is unclear. Plaintiffs appear to again refer to their allegation that the minimum payment does not include overlimit fees and late fees. Such fees, however, are explicitly excluded from TILA's definition of finance charges. 12 C.F.R. 226.4(c). Accordingly, this cannot forms the basis of a claim under TILA.

### D. Failure to Send Statements.

In their opposition, plaintiffs advance an entirely new theory of how defendants' conduct violated TILA. For accounts that defendants considered charged off as uncollectible, they stopped sending account statements while still maintaining that the accounts were still accruing fees and interest (Sec. Amd. Compl. ¶ 26). Regulation Z requires that creditors issue monthly statements, except "if the creditor deems [the account] uncollectible, or if delinquency collection proceedings have been instituted, or if furnishing the statement would violate Federal law." 12 C.F.R. 226.5(b)(2). Creditors for open-ended accounts, such as credit cards, are required to classify accounts that are more than 180 days past due as a loss and charge them off. Such classified losses are deemed uncollectible. 65 Fed. Reg. 36903, 36904 n.1 (June 12, 2000). As a credit card issuer, defendants are required to charge off accounts that are 180 days past due. Once accounts are charged off, Regulation Z states that creditors are no longer obliged to send statements. Here, plaintiffs have alleged that defendants have done something that they are expressly allowed to do under the law. It is not possible that this could be a violation of TILA.

Plaintiffs cite *Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1387 (5th Cir. 1976), for the proposition that the failure to issue billing statements is a TILA violation. This out-of-circuit authority gives plaintiffs little help. In *Murray*, the plaintiff pleaded only that he did not receive account statements. The defendants raised the defense that Murray's account was in collection procedures, so they did not need to send statements. Plaintiffs here neglected to tell the Court the Murray never pleaded that the defendants had started collection proceedings. *Ibid*. Here, plaintiffs pleaded that "Capital One has a policy and practice in which it refuses to issue billing statements to accounts which it has 'charged off' as a loss for tax purposes, even though it

9

claims interest and fees continue to accrue on the outstanding balances" (Sec. Amd. Compl. ¶ 26). Plaintiffs' allegation that the accounts on which defendants stopped sending statements were uncollectible cannot be ignored. Accordingly, defendants have shown, at based upon the issues briefed, that plaintiffs have failed to state a claim for violation of TILA. Defendants' motion to dismiss is **GRANTED**, and this claim is dismissed.

### E. Leave to Amend.

At the hearing on this motion, plaintiffs for the first time advanced a theory that defendants have violated TILA by levying finance charges or interest on the overlimit and late fees charged on cardholders' accounts. Because this issue was not developed in the complaint or in the briefing, it is unclear whether this can constitute a violation of TILA. Plaintiffs also stated at the hearing that they would seek leave to amend for which they did not ask in their opposition. Whether or not to allow leave to amend is a close question. This is the third iteration of the complaint.

Plaintiffs, however, will allowed to seek leave to amend their TILA claim and develop the new "interest on fees" theory. Plaintiffs must file their proposed, amended pleading, along with a motion to seek leave to amend their TILA claim explaining why their new theory states a claim. This must be done no later than **MONDAY, AUGUST 27, 2007, AT NOON**. Defendants' opposition will be due no later than **TUESDAY, SEPTEMBER 4, 2007, AT NOON**. Plaintiffs' reply will be due no later than **FRIDAY, SEPTEMBER 7, 2007, AT NOON**. The Court will then decide whether or not a hearing on the motion is necessary. Please do not ask for extensions. Regardless of whether leave to amend is ultimately granted, plaintiffs must confine themselves to amending *only* the TILA claim to state the "interest on fees" theory they presented at the hearing. Because of this, the deadline by which the motion for class certification must be filed is extended to **SEPTEMBER 27, 2007**, with the hearing to be held on **NOVEMBER 1, 2007**.

### 2. MOTION FOR SUMMARY JUDGMENT AS TO CAPITAL ONE FINANCIAL.

Summary judgment should be granted where the pleadings, discovery, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party has the initial burden of

10

production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party has met its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

### A.   TILA Claim.

As to plaintiffs' first claim, defendants contend that Capital One Financial cannot be held liable under TILA because it is not a creditor. TILA imposes civil liability on "any creditor who fails to comply with [its] requirement[s]." 15 U.S.C. 1640(a). Creditors are defined as persons who regularly extend credit and to whom the consumer's debt is initially payable. 15 U.S.C. 1602(f).

Here, defendants present evidence that Capital One Financial does not issue credit cards (Cook Decl. ¶ 5). Capital One Financial also maintains separate corporate formalities and a separate board of directors from Capital One Bank (*id.* at ¶ 4). Furthermore, they present plaintiffs' card member agreements, all of which are with Capital One Bank, not Capital One Financial (Doome Decl. Exhs. A–M). Plaintiffs do not present any evidence, they merely argue that Capital One Financial should be held directly liable. Defendants have, however, eliminated all triable issues of fact as to whether Capital One Financial was a creditor under the TILA. Moreover, defendants' motion to dismiss this claim has been granted. Plaintiffs argue that they are entitled to discovery under Rule 56(f) before a summary judgment motion is heard. "A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Plaintiffs have identified no specific facts they could find on further discovery. Accordingly, they cannot be held liable, and defendants' motion is **GRANTED** as to the TILA claim.

### B. UCL and Deceit Claims.

As to plaintiffs' other claims, defendants argue that Capital One Financial cannot be held liable because plaintiffs never had credit cards from them, nor did they ever pay any fees to them. Again, defendants present evidence that the two companies, Capital One Financial and Capital One Bank are separate companies. They maintain corporate formalities and have separate boards. They also reiterate that Capital One Financial was not a party to any credit agreements, does not issue credit cards, and does not levy or collect fees.

In response, plaintiffs maintain that they are not arguing that Capital One Financial is vicariously liable. Instead they argue that Capital One Financial is directly liable. In support, they present a select number of documents in which Capital One Financial appears to discuss responses to inquiries by consumer groups regarding Capital One's credit card practices (Mottek Decl. Exhs. 2–9). While plaintiffs' contention that "[a]t virtually every turn, the documents show that COF was the entity directing the operations" overstates the contents of those documents, plaintiffs have still shown that, at least at this stage, there is a triable issue of fact as to Capital One Financial's involvement in formulating credit card policies (Opp. at 3). Further discovery is needed to determine Capital One Financial's involvement, if any, in setting credit card policies and practices. Accordingly, defendants' motion for summary jugdment is **GRANTED** as to plaintiffs' TILA claim, and **DENIED** as to plaintiffs' other claims.

### 3. MOTION FOR SUMMARY JUDGMENT ON BROWNING'S CLAIMS.

Defendants also move for summary judgment on all claims asserted by plaintiff Thomas E. Browning because he is barred from asserting them by a prior settlement agreement in *Foster v. Capital One Bank and Capital One Services*, filed in Arkansas state court. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Arkansas law, res judicata bars the claims that were actually litigated, in addition to those that could have been litigated in the first action. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 388 (2003).

Absent class members can be bound by a class judgment or settlement if the following due process requirements are satisfied: (1) absent plaintiffs must receive notice; (2) the method of giving notice must be reasonably calculated to apprise interested parties of the pendency of the action and give them a chance to present their objections; (3) the notice must explain the action and class members' rights in the action; (4) absent plaintiffs must be given an opportunity to opt out of the class; and (5) the named plaintiffs must adequately represent the interests of absent class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

Here, defendants present evidence that Browning received notice of the suit. The claims administrator declared that Browning's name was on the class list, that he was sent a notice, and that the notice was not returned undeliverable. The notice also informed absent class members of the action, and explained their rights. The court held that the method of giving notice was carried out in such a way as to be the best practicable way of apprising absent plaintiffs to the pendency of the action under the circumstances. Absent plaintiffs were also given the opportunity object to and opt out of the settlement which Browning declined to do. Finally, in approving the settlement agreement, the Arkansas court held that the named plaintiffs adequately represented the interests of the absent class members. Moreover, the release in *Foster* covered not only claims related to the security deposit, but all claims related to fees and charges on virtual deposit accounts.

In response, plaintiffs contend that the *Foster* settlement covers only secured or virtual deposit cards, and Browning did not have a secured account. Defendants present the declaration of Tom Doome, a senior complaint associate for Capital One Services, Inc. He declares that Browning had a virtual deposit card of the kind covered by the *Foster* settlement. In Doome's reply declaration, he presents a report generated from Capital One's databases which listed Browning's account as "EZD" (Doome Reply Decl. Exh. A). Plaintiffs also point out that none of Browning's account statements received from defendants state that he has a virtual deposit card (Mottek Decl. Exh. A). It appears, however, that plaintiffs submitted only a few selected statements from Browning's account. Statements submitted by defendants clearly

13

show that a security deposit was charged on Browning's account. Those statements also contain multiple references to the security deposit. Even viewing the evidence in the light most favorable the plaintiffs, no reasonable jury could find that Browning did not have a virtual deposit card. Accordingly, defendants' motion for summary judgment as to claims brought by plaintiffs Thomas Browning is **GRANTED**, and his claims must be **DISMISSED**.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to dismiss plaintiffs' first claim is **GRANTED**. Defendants' motion for summary judgment on all claims against Capital One Financial is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion for summary judgment on all claims asserted by plaintiff Thomas E. Browning is **GRANTED**, and those claims must be **DISMISSED**.

As stated above, plaintiffs should file their proposed amended pleading and motion for leave to file an amended complaint by **MONDAY, AUGUST 27, 2007, AT NOON**. Defendants' opposition is due **TUESDAY, SEPTEMBER 4, 2007, AT NOON**. Plaintiffs' reply is due **FRIDAY, SEPTEMBER 7, 2007, AT NOON**. The deadline by which the motion for class certification must be filed is extended to **SEPTEMBER 27, 2007**, with the hearing to be held on **NOVEMBER 1, 2007**.

**IT IS SO ORDERED.**

Dated: August 17, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE