1
2
3
4
5
6                        IN THE UNITED STATES DISTRICT COURT

7                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9

10   DAVID VAN SLYKE, FRANKLIN CHAN,              No. C 07-00671 WHA
     and THOMAS E. BROWNING, on behalf of
11   themselves and all others similarly situated,

12              Plaintiffs,                        **ORDER DENYING PLAINTIFFS'**
                                                   **MOTION FOR LEAVE TO FILE**
13      v.                                         **AN AMENDED COMPLAINT**

14   CAPITAL ONE BANK, CAPITAL ONE
     FINANCIAL CORPORATION, and DOES
15   1–100, inclusive,

16              Defendants.

17   _____/

18                              **INTRODUCTION**

19          In this putative class action regarding defendants' credit card practices, a prior order

20   allowed plaintiffs to file a motion for leave to file a third amended complaint.  Plaintiffs wanted

21   to assert a claim under the Truth in Lending Act based on interest charged on late and overlimit

22   fees on cardholders' accounts.  Defendants have shown that plaintiffs' proposed amendment

23   would be futile.  Accordingly, plaintiffs' motion to for leave to file a third amended complaint

24   is **DENIED**.  Plaintiffs' TILA claims are **DISMISSED**.

25                               **STATEMENT**

26          The facts involved in this action have been set out in a number of prior orders.  In brief,

27   plaintiffs filed this class action against defendants alleging that their practices in issuing credit

28   cards to subprime customers violated federal and state laws.  When targeting the subprime

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

credit card market, defendants allegedly do so with the expectation that card holders will default on at least one account allowing defendants to charge very high fees. Capital One Bank allegedly offers several credit cards with low credit limits, around $250 to $500, to its subprime customers, betting that they will exceed the limit on at least one card, allowing Capital One to charge fees on *all* card accounts.

Plaintiffs also allege that Capital One Bank's disclosures related to the cost of credit for its subprime products are inadequate and deceptive. For example, credit card customers receive a monthly statement that shows a minimum payment that customers must pay. Many of Capital One's subprime customers are allegedly led to think they need only make the minimum payment to keep from defaulting on their account. Problems arise when Capital One adds late fees or overlimit fees to the account. With alleged deceptiveness, the minimum payment does *not* include those fees, so even though a customer pays the stated minimum payment, his or her account is still in default because of the additional fees, leading to a daisy chain of further penalties.

An order issued on August 17, 2007, granting defendants' motion to dismiss plaintiffs' TILA claim. Plaintiffs had alleged that defendants sent pre-approved, unsolicited credit card offers, that defendants had failed to disclose the minimum payment, and that defendants stopped sending statements to accounts deemed uncollectible. The order held that even taking all pleaded facts as true, none of those practices violated TILA. At the hearing on the motion, plaintiffs' counsel raised a new theory of how defendants' credit card practices could violate TILA. Capital One allegedly charges interest on fees without informing cardholders, which according to plaintiffs, violated TILA.

Although defendants' motion to dismiss was granted, plaintiffs were allowed to file a motion for leave to file an amended complaint. The amendments were to address only the interest-on-fees theory plaintiffs mentioned at the hearing. A briefing schedule was set. Both sides sent in unsolicited supplemental declarations.

2

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2      Leave to amend a complaint shall be freely given when justice so requires under FRCP

3   15(a).  This standard is applied liberally.  Rule 15(a) does not apply, however, when a district

4   court has established a deadline for amended pleadings under FRCP 16(b).  *See Johnson v.*

5   *Mammoth Recreations, Inc.*, 975 F.2d 604, 607–608 (9th Cir. 1992).  Once the Court has

6   entered a scheduling order, the liberal policy favoring amendments no long applies.  Subsequent

7   amendments are not allowed without a request to first modify the scheduling order.  At that

8   point, any modification must be based on a showing of good cause.  *Coleman v. Quaker Oats*

9   *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  "Leave to amend need not be granted when an

10  amendment would be futile."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir.

11  2002).

12     Plaintiffs and defendants raise a number of arguments as to whether plaintiffs should be

13  allowed to file an amended complaint.  In particular, defendants contend that plaintiffs cannot

14  show good cause and that amendment would cause them prejudice.  Plaintiffs fire back

15  asserting that any delay or prejudice was defendants' fault because of their filing numerous

16  motions.  Then defendants accuse plaintiffs of delay tactics in discovery.  None of these

17  arguments are helpful here as they do not address the merits of plaintiffs' proposed amendment.

18     Here, the primary issue is futility and whether plaintiffs' proposed amendment can state

19  a claim under TILA.  The proposed amended pleading alleges that (Mot. Exh. 1, ¶¶ 54–55)

20  (emphasis in original):

21          54.    Defendants failed to disclose that interest is charged on
              penalty fees.  Defendants also failed to disclose that they bill
22            penalty fees and interest thereon in the cycle ***following*** the month
              in which they were incurred.

23
            55.    Capital One's failure to disclose that interest is charged on
24            penalty fees in its applications and solicitations and in its billing
              statements, or in any document submitted to actual or potential
25            customers, violates the TILA because Capital One does not
              disclose:

26
                  (a)    The balance upon which a finance charge will be
27                      imposed in violation of 15 U.S.C. § 1637(a)(2);

28

3

United States District Court
For the Northern District of California

| | (b) | The method for determining the amount of the finance charge in violation of 15 U.S.C. § 1637(a)(3); |
|---|---|---|
| | (c) | The range of balances to which an interest rate will be applied in violation of 15 U.S.C. § 1637(a)(4); |
| | (d) | The amount of finance charges on its billing statements in a billing cycle for which penalty fees were assessed in violation of 15 U.S.C. § 1637(b)(4); |
| | (e) | The date by which payment must be made in its billing statement to avoid additional finance charges in violation of 15 U.S.C. § 1637(b)(9). |

Plaintiffs argue that Capital One bills its late and overlimit fees on the first date of the next payment cycle after the one in which they were incurred.  Capital One charges interest on those fees starting at the time the fee is incurred through the time the fee is actually billed to the account.  Plaintiffs allege that they do not disclose this.

First, to the extent that plaintiffs attempt to bring a TILA claim against Capital One Financial, they may not do so.  The order dated August 17, 2007, granted partial summary judgment and held that Capital One Financial was not a creditor within the meaning of TILA. *Van Slyke v. Capital One Bank*, 2007 WL 2385108, *8 (N.D. Cal. Aug. 17, 2007).  Since only creditors can be held liable under that statute, plaintiffs cannot state a claim against Capital One Financial.

Turning to the substance of the new theory, nothing in TILA prohibits a creditor from billing and itemizing overlimit and late fees to the billing cycle after which they were incurred.  Indeed, it is difficult to understand how creditors could bill such fees at any other time.  For instance, if a cardholder goes over the limit on the twentieth day of the month, with the billing cycle closing at the end of the month, the creditor could not, as a practical matter, alert cardholders to those fees until the next statement.  The creditor has no way of knowing in any given month whether any particular customer will incur fees.  Thus, it would be impossible for them to be billed on anything other than the next month's statement.

Plaintiffs assert that the problem arises when Capital One starts charging interest on those fees as of the date they were incurred.  To use plaintiffs' example, a cardholders' billing cycle begins on the first date of a month.  The cardholder incurs an overlimit fee on April 10,

4

United States District Court

For the Northern District of California

1    but the cycle does not end until April 30.  Capital One charges interest on that fee from April

2    10, to April 30, but the fee and the interest are not billed to the account until May 1.  Then,

3    according to plaintiffs, the cardholder does not know that he or she is required to pay the fee

4    and the interest *in addition* to the minimum payment stated on the bill to avoid incurring more

5    finance charges in May.

6          There are three parts to plaintiffs' theory:  (1) Capital One charges interest on fees

7    before they show up on a statement; (2) Capital One does not tell cardholders that it charges

8    interest on fees before the fees show up on a statement; and (3) the amount of the minimum

9    payment on cardholders' statements will not keep the account out of default because it does not

10   include the interest and the fees.

11         Defendants contend that nothing in TILA prohibits creditors from charging interest on

12   fees before they are billed to the statement.  Plaintiffs do not point to any such provision.

13   Although plaintiffs skirt the issue, the guts of this theory is that late and overlimit fees are added

14   automatically to the balance on the account, where they incur fees (Mottek Reply Decl. Exh. 1,

15   120:7–15).  Even though such practices seem harsh toward plaintiffs, as long as defendants

16   disclose them, then defendants do not run afoul of TILA.  Indeed, the majority of their

17   arguments focus on the information required to be disclosed to consumers.

18         As to the second part of plaintiffs' theory, defendants argue that they have, in fact, met

19   all of their obligations as to disclosures under TILA.  In the initial disclosures, TILA requires

20   creditors to disclose the method it uses to determine the balance imposed, the method it uses to

21   compute finance charges, and the range of balances to which interest rates will apply.  15

22   U.S.C. 1637(a)(2)–(4).  Defendants claim that they have done precisely that — the initial

23   disclosures for plaintiffs' accounts state that late and overlimit fees are added to the purchase

24   segment of the account (McGuire Decl. Exh. G, H).  The initial disclosures also explain how

25   finance charges are calculated on the purchase segment of the balance (*ibid.*).  Plaintiffs seem to

26   argue that defendants should spell out precisely when interest begins to run, but this is not

27   required under TILA.  These practices could arguably be deceptive, but they are not a violation

28   of TILA.  At least with respect to the initial disclosures, it appears that this theory fails.

1    Plaintiffs also allege that this practice violates 15 U.S.C. 1637(b)(9), which requires

2 creditors to disclose in their periodic statements "[t]he date by which or the period (if any)

3 within which, payment must be made to avoid additional finance charges, except that the

4 creditor may, at his election and without disclosure, impose no such additional finance charge if

5 payment is received after such date or the termination of such period."  Here, plaintiffs'

6 allegation has nothing to do with the *period* in which payment must be made to avoid finance

7 charges.  Since Capital One states that it adds fees directly to the purchase segment of the

8 account, this regulation does not apply to those fees.  The purchase segment is not subject to

9 any grace period described in this regulation.  Capital One's billing practices are rough on

10 cardholders who incur fees, but they do not appear to be illegal under TILA.  The initial

11 disclosures state that the fees are added to the purchase segment, and that interest accrues on the

12 purchase segment.

13    They also allege that not including this information violates 15 U.S.C. 1637(b)(4),

14 which requires that creditors disclose "[t]he amount of any finance charge added to the account

15 during the period, itemized to show the amounts, if any, due to the application of percentage

16 rates and the amount, if any, imposed as a minimum or fixed charge."  Overlimit and late fees

17 are not, by themselves, finance charges.  12 C.F.R. 226.4(c).  Interest accrued on late and

18 overlimit fees is a finance charge.  Under Regulation Z, creditors are required to disclose on

19 periodic statements the balance on which the a periodic rate was applied and the manner in

20 which that balance was determined.  12 C.F.R. 226.7(e).  Again, defendants argue that they

21 have done precisely that.  A box appears on statements received by plaintiff Robert Hart that

22 displays that balance on which the periodic interest rate was applied.  The late and overlimit

23 fees are not broken out into component parts of the balance, but this is not required under

24 Regulation Z.  It only requires the balance to be disclosed on the statement.  Moreover, the

25 statements list the past due fee under the heading marked "transactions" and they also tell the

26 cardholder when the fee was incurred (McGuire Decl. Exh. I).

27    Again, plaintiffs assert that defendants should have to separately itemize the late and

28 overlimit fees and any interest incurred thereon in the periodic statements.  TILA does not

require such a disclosure.  It requires defendants to state the balance on which finance charges were assessed.  Late and overlimit fees are included in the balance.  Again, this theory could be better suited to plaintiffs' claims for deceit and unfair business practices.  Here, it appears that defendants have complied with the letter of TILA, and amending the complaint would be futile.

Turning to the third part of the theory, this Court has already held that creditors are not required to disclose minimum payments under TILA in the order on defendants' motion to dismiss.  *Van Slyke*, 2007 WL 2385108 at *4–*5.  For the same reasons, plaintiffs' argument that the minimum payment on cardholders' statements is not enough to keep them from incurring more fees fails as well.  As stated previously, this allegation probably fits better in plaintiffs' deceit or unfair business practices claim.

Finally, plaintiffs contend that it is not enough to comply with the letter of TILA.  In support, they ask that the Court take judicial notice of a letter from the Office of the Controller of Currency (Pl. RJN Exh. A).  They note that the letter states that "depending on the totality of the circumstances, an institution may be engaged in unfair or deceptive actions or practices for marketing or other practices even if the transaction is otherwise in technical compliance with applicable TILA and Regulation Z provisions" (*ibid.*).  Defendants oppose the request for judicial notice.  First, defendants are not a national bank, and the OCC regulates only national banks.  Second, and more importantly, this statement has nothing to do with whether plaintiffs can state a claim under TILA.  It is axiomatic that it is not enough to only comply with TILA.  Banks are still subject to state consumer-protection laws, such as California's § 17200, under which plaintiffs have asserted a claim.  The OCC's statement merely warns national banks that they could be liable under laws, like state consumer-protection statutes, other than TILA.  The statement does not provide any interpretation of TILA.  Overall, this interest-on-fees theory seems much better suited to plaintiffs' state-law unfair business practices and deceit claims than to a claim under TILA.  Accordingly, plaintiffs' motion for leave to file a third amended complaint is **DENIED**.

**CONCLUSION**

For all of the above-stated reasons, plaintiffs' motion for leave to file an amended complaint is **DENIED**.  Defendants shall have **TEN DAYS** from the date of this order in which to answer.

**IT IS SO ORDERED.**

Dated:  September 28, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

8