**United States District Court**
For the Northern District of California

1

2

3

4

5

6        IN THE UNITED STATES DISTRICT COURT

7

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

DAVID VAN SLYKE, FRANKLIN CHAN
11   and THOMAS E. BROWNING, on behalf of
themselves and all others similarly situated,          No. C 07-00671 WHA
12
            Plaintiffs,
13
     v.                                                **ORDER DENYING MOTION
14                                                     FOR RECONSIDERATION**
CAPITAL ONE BANK, CAPITAL ONE
15   FINANCIAL CORPORATION, and DOES
1–100, inclusive,
16
            Defendants.
17  ————————————————————————/

18                        **INTRODUCTION**

19       In this protracted grudge match over credit-card practices, two recent orders have

20   effectively ended plaintiffs' claims.  Now, reconsideration is sought and **DENIED**.

21                         **STATEMENT**

22       Plaintiffs are all holders of credit-card accounts with Capital One Bank.  Defendant

23   Capital One Financial is Capital One Bank's parent company.  Both defendants are located in

24   Virginia.  This action commenced on February 1, 2007, asserting claims for (1) violations of

25   the Truth in Lending Act; (2) violations of California's Consumer Legal Remedies Act;

26   (3) violations of California's Unfair Competition Law; and (4) deceit and omission of material

27   facts.  The motion practice has been bone-crushing.

28

United States District Court
For the Northern District of California

1    On June 7, 2007, an order dismissed the CLRA claim.  Plaintiffs filed a first amended

2    complaint omitting that claim on June 27.  Defendants then filed a motion for reconsideration

3    regarding certain issues in their original motion to dismiss.  An order then struck plaintiffs'

4    allegations regarding Capital One's state of mind from plaintiffs' deceit claim.

5    Plaintiffs filed a second amended complaint on July 3, in conformity with the prior order

6    and adding plaintiffs Myrna Bragado, Susanna Garcia, and Robert Hart.  Defendants

7    subsequently filed a motion to dismiss plaintiffs' TILA claims and a motion for summary

8    judgment as to all of plaintiff Thomas Browning's claims and all claims against Capital One

9    Financial.  The Court issued an order granting the motion to dismiss and granting summary

10   judgment as to Browning's claims and the TILA claim as to Capital One Financial.  Leave to

11   amend was granted, but *only* as to the TILA claim in order to allow plaintiffs to plead an

12   "interest on fees" theory.  Nevertheless, plaintiffs submitted a proposed pleading that included a

13   number of other changes to their deceit and UCL claims.  Plaintiffs' motion for leave to file an

14   amended complaint was denied on September 28, 2007.

15   On September 27, 2007, defendants filed summary judgment motions on plaintiffs'

16   deceit claims and UCL claims, and plaintiffs filed a motion to certify a class.  On October 5,

17   plaintiffs filed a motion for leave to file a third amended complaint.  Then, on October 12,

18   defendants filed counterclaims against each named plaintiff.  On November 1, a hearing

19   was held on the motions for summary judgment and the class certification motion.

20   Plaintiffs introduced new theories at the hearing and in their opposition briefs on their

21   deceit and Section 17200 claims.

22   On November 7, 2007, an order granted defendants' motions for summary judgment,

23   but declined to address the new theories because they did not appear in the operative complaint

24   and declined to rule on the pending class-certification motion.  On November 13, an order was

25   issued denying plaintiffs' motion for leave to file a third amended complaint and denying

26   plaintiffs' motion to certify a class.  At that point, only defendants' counterclaims remained.

27   On November 19, plaintiffs filed a motion for leave to file a motion for reconsideration of the

28   November 7 and 13 orders.

**United States District Court**
For the Northern District of California

1

**ANALYSIS**

2      In order to seek reconsideration of a prior ruling, a party must first obtain leave of the

3  court to file a motion.  Under Civil Local Rule 7-9(b), a party may seek leave to move for

4  reconsideration of an order issued before the entry of a judgment on all claims if a party can

5  demonstrate either:  (1) that there is a material difference of fact or law between the time of the

6  motion for leave and the time of an entry of an interlocutory order; (2) that new material facts

7  emerged or a change of law occurred after the entry of the order; or (3) a manifest failure by the

8  court to consider material facts or dispositive legal arguments which were presented before the

9  interlocutory order was entered.

10      These requirements allow for reconsideration of prior rulings under certain limited

11  circumstances, but the rule does not allow a party to simply relitigate an issue that has already

12  been argued and decided.  *Backlund v. Barnhart*, 778 F.3d 1386, 1388 (9th Cir. 1985).

13      Plaintiffs' motion argues two main points.  *First*, plaintiffs argue that the November 7

14  order did not consider the central allegations of plaintiffs' complaint and was manifestly

15  incorrect in asserting that plaintiff was adding new theories of recovery, and *second*, plaintiffs

16  argue that the order applied the wrong legal standards in granting defendants' summary

17  judgment motions.  Each argument will be addressed below.

18      **1.      THE SUMMARY JUDGMENT ORDER CONSIDERED
          THE CENTRAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT.**

19
      Plaintiffs argue that there was a manifest failure to consider the "central and
20
fundamental" allegations of plaintiffs' complaint, namely that defendants "engaged in an
21
overarching scheme to boost its earnings with fee income, and that payment of the fees
22
themselves injured plaintiffs" (Br. 5).  Plaintiffs contend that the November 7 order granting
23
summary judgment did not focus on these allegations.  Instead, plaintiffs argue that the order
24
focused on practices that plaintiffs had *not* alleged, namely defendants' "cross-default"
25
fee-collection scheme, and plaintiffs' "minimum payment" allegations.
26
      Plaintiffs argue in their motion for leave to file a motion for reconsideration that they
27
never made the cross-default or minimum payment allegations (Br. 5).  This is not true.
28
Plaintiffs' counsel Jacqueline Mottek stood before the Court on numerous occasions,

3

United States District Court

For the Northern District of California

1    including the November 1 hearing on defendants' summary judgment motions, and reiterated

2    these allegations.  The November 7 order granting summary judgment addressed plaintiffs'

3    "cross-default" allegations, in which defendants allegedly issued multiple low-limit credit cards

4    to cardholders with the intention that cardholders default on one card so that defendants could

5    then charge fees on all cards.  The order found that no named plaintiff had ever been subjected

6    to cross-default, and therefore granted summary judgment on that issue.

7          As for the minimum-payment allegations, the November 7 order noted that the Court

8    had been led to believe by plaintiffs' counsel that she was alleging that the minimum payments

9    listed on the monthly statements were not enough to keep cardholders out of default because

10   they allegedly did not include late fees and overlimit fees.  At the hearing, plaintiffs' counsel

11   surprised the Court by announcing that this was no longer her theory.  Instead, she argued that

12   even if defendants did in fact include fees and charges in minimum payments, they nevertheless

13   engaged in deceptive practices by not noting in the statements that any subsequent charges

14   might result in more fees.  Plaintiffs thus abandoned their original theory and instead alleged

15   that defendants actions lulled cardholders into a "false sense of security" by encouraging

16   them to think they could go out, charge more on their card, and avoid fees.  As previously

17   explained, the new theory assumed that cardholders do not track their balances and credit limits.

18   Counsel argued that defendants should include the fees from the second billing cycle in the first,

19   but the order found that such a measure on the part of defendants would require a crystal ball.

20   The order concluded that defendants could not anticipate future fees, and accordingly granted

21   summary judgment.

22         Counsel now seems to abandon *both* these theories.  She seems now to contend that the

23   Court has, all along, ignored the *central* theory, that of an "overarching scheme to boost

24   earnings with fee income" that soaked consumers with high and frequent fees.  The overarching

25   scheme is based, however, on the *same* alleged practices considered in both the November 7

26   and November 13 orders.  These included (1) failing to disclose and "misrepresenting" that

27   Capital One targeted subprime consumers with solicitations for multiple credit cards based on

28   the calculation that subprime cardholders would generate the most revenue in fees; (2) failing to

4

United States District Court

For the Northern District of California

1   adequately disclose that they charged interest on fees; (3) failing to disclose that fees can

2   generate fees; (4) failing to disclose that as many as three overlimit fees can be charged for a

3   single incident; (5) failing to disclose that the minimum payment does not include penally fees;

4   (6) failing to disclose that fees and interest on the fees were billed in the cycle following the one

5   in which they were incurred; (7) failing to disclose that the reason payments must be posted by

6   3:00 p.m. rather than 12:00 a.m. was to generate fees, not because of operational limitations;

7   (8) failing to disclose that the purpose of the so-called 25-day grace period was to generate

8   additional fees; (9) receiving numerous customer complaints; and (10) failing to disclose

9   limitations and exclusions regarding payment-protection plans before cardholders agreed to

10  purchase them.

11          Some of these practices were disposed of on summary judgment, and others were

12  notably absent from the proposed third amended complaint. The November 13 order considered

13  these arguments and stated that even if plaintiffs were allowed to add them, they *still* would not

14  have a viable complaint. This remains the case. There was no manifest failure to consider these

15  arguments, even those which were brought up late or changed midstream.

16          **2.      THE COURT APPLIED THE CORRECT LEGAL STANDARDS.**

17          **A.      The Court Did Not Mischaracterize Plaintiffs' Arguments.**

18          Characterizing the situation differently, counsel also contends that the order granting

19  summary judgment failed to consider new evidence presented in plaintiffs' opposition to

20  defendants' motions for summary judgment. Rather than new "theories," the new arguments

21  described above were merely "evidence" only just uncovered, it is said. Plaintiffs argue they

22  were simply pointing to factual evidence that supports claims that defendants engaged in an

23  overarching scheme to boost earnings with fee income. This argument misstates plaintiffs'

24  arguments in this case.

25          The November 7 order found that the original minimum-payment allegations were

26  without merit, and then found that the plaintiffs' second theory, the "false sense of security"

27  theory, did not state a claim. The order also found that no named plaintiff had ever been in

28  cross-default. The order did not at that time consider the new allegations because they were not

5

1   part of the operative complaint at the time and were separate from plaintiffs' previous

2   contentions. Plaintiffs' counsel was operating as if playing a game of darts, throwing out

3   allegations that a number of practices were unfair under the UCL, and hoping one theory would

4   stick. Now plaintiffs wish to have the Court treat these arguments as "evidence" of a broad,

5   overarching scheme, but they have failed to point to anything making defendants' conduct

6   illegal. They cannot introduce evidence without alleging a claim upon which relief can be

7   granted. As the November 13 order stated, these arguments do not save plaintiffs' complaint.

8   They were correctly viewed as new allegations, not evidence, and therefore the orders did not

9   apply the wrong legal standard.

10                    **B.      The Court Applied the Correct Legal Standards**
                              **To Plaintiffs' UCL Claims.**

11

12          By abstracting their argument to the highest level of generality and now arguing an

13   overarching scheme to defraud, plaintiffs argue that the November 7 order misapplied Rule

14   9(b), arguing that it should not apply since defendants' summary judgment motions were

     directed toward evidence (Br. 15). This is wrong. Evidence is beside the point without a viable
15
     theory.
16
            Plaintiffs also contend that the order misapplied the legal standard for the requirement of
17
     California Business and Professions Code Section 17204 that plaintiffs have "lost money or
18
     property" as a result of defendants' fraudulent practices. Plaintiffs argue that defendants'
19
     fee-generation scheme did deceive plaintiffs into paying fees and the fact that plaintiffs paid
20
     fees means they lost money or property.
21
            Plaintiffs' argument about Section 17204 is bogus, because it merely alleges that
22
     defendants cheated plaintiffs by charging late fees, and plaintiffs' payment thereof constituted a
23
     loss of money or property. For this argument to have merit, every cardholder who paid late fees
24
     would have standing regardless of whether the fees were deserved or not. It is circular
25
     reasoning and does not avoid the fact that plaintiffs still cannot point to any law or policy
26
     making defendants' practices illegal. The order did not misapply Rule 9(b) or Section 17204.
27
            Plaintiffs also argue that the November 7 order did not correctly apply California
28
     precedent under the unlawful conduct prong of the UCL because it did not address *Garrett v.*

6

**United States District Court**
For the Northern District of California

1    *Coast & South Federal Savings & Loan Association*, 9 Cal. 3d 731 (1973) and instead

2    addressed *Bondanza v. Peninsula Hospital & Medical Center*, 23 Cal. 3d 260 (1979).  Plaintiffs

3    present this argument in spite of the fact that their opposition to defendants' summary judgment

4    motion relied heavily on *Bondanza*, and the fact that they were free to base the thrust of their

5    earlier argument on *Garrett*.  Regardless, *Garrett*, like *Bondanza*, stood for the proposition that

6    banks may not charge fees that bear no relationship to the costs incurred as a result of the late

7    payments.  As noted in the November 7, 2007, order, however, defendants presented evidence

8    that the fee structure was completely disclosed to plaintiffs, and this was not controverted by

9    plaintiffs, who did not present evidence that fees charged were unrelated to their costs.

10   Thus, summary judgment was properly granted and the order did not apply the wrong standard.

11                                                       **CONCLUSION**

12           This Court has done the best it can do with this ever-changing, ever-shifting set of

13   theories.  It is time for this tortured record to go to the court of appeals.  Counsel will please be

14   as candid as possible with the circuit judges in identifying when and where in the lower court

15   process various points and objections were made so that if the district court is reversed, it will

16   be on account of some matter properly of record *before* the rulings in question.  The motion for

17   reconsideration is **DENIED**.

18

19           **IT IS SO ORDERED.**

20

21   Dated:  December 3, 2007.

22                                                       WILLIAM ALSUP
                                                         UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

7